UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHARLES L. BRYANT,

       **Plaintiff,**

   v.

ANDREW SAUL,
**Commissioner of Social Security,**

       **Defendant.**

Case No. 2:18-cv-5411
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Charles L. Bryant for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.   PROCEDURAL HISTORY**

On December 19, 2014, Plaintiff filed his application for benefits, alleging that he has been disabled since August 31, 2012. R. 257–58. The application was denied initially and upon reconsideration. R. 136–40, 144–46. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 147. Administrative Law Judge Hilton R. Miller ("ALJ") held a hearing on January 11, 2017, at which Plaintiff, who was represented by counsel, appeared and testified, as did both

1

a medical and a vocational expert. R. 82–116. In a decision dated March 10, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 31, 2012, Plaintiff's alleged disability onset date, through the date of that decision. R. 11–18. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on February 3, 2018. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 28, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[1] On March 11, 2020, the case was reassigned to the undersigned. ECF No. 30. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc.*

---

[1]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

*Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of*

3

*Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice."  *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

4

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.  Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.  ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 31, 2012, his alleged disability onset date, and December 31, 2017, the date on which Plaintiff was last insured for disability insurance benefits. R. 13.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: hypertension and hypertensive cardiovascular disease. *Id*. The ALJ also found that Plaintiff's diagnosed impairments of chronic kidney disease and obesity and Plaintiff's alleged arthritis were not severe. R. 13–14.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 14.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 14–17. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a security guard. R. 17. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security from August 31, 2012, his alleged disability onset date, through the date of the decision. R. 17–18.

Plaintiff disagrees with the ALJ's findings at steps two, three, and four and asks that the decision of the Commissioner be reversed and remanded for further consideration. *Plaintiff's Brief,* ECF No. 26. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and is supported by sufficient explanation and

substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 29.

## IV. DISCUSSION

Plaintiff raises several challenges to the ALJ's decision, including, *inter alia*, his contention that the ALJ erred when he relied on the medical expert's opinion that Plaintiff's hypertension was controlled when he took his medication and when he discounted the contrary opinion of the consultative examiner. *Plaintiff's Moving Brief*, ECF No. 26, pp. 19–23, 33–37. This Court agrees.

Alexander Hoffman, M.D., performed a consultative examination of Plaintiff on June 3, 2016, and completed a physical RFC assessment. R. 515–26. Dr. Hoffman noted Plaintiff's history of enlarged heart and a cardiac catheterization in 2014 which revealed no blockages. Plaintiff reported no chest pain but swelling of the legs. Plaintiff was prescribed medication for hypertension as well as a diuretic. R. 515. At the time of Dr. Hoffman's consultative examination, Plaintiff's medications were Losartan and hydrochlorothiazide, Atorvastatin, Omeprazole, Metoprolol, Potassium, Aspirin, and Vitamin D. *Id*. Dr. Hoffman described Plaintiff as "stocky" and "mildly obese" at 5 feet 11 inches and 230 pounds. R. 516. Plaintiff's blood pressure was 160/100. *Id*. Dr. Hoffman also noted a regular heart rate and rhythm without murmur or friction rub. *Id*. There was no evidence of swelling or edema. *Id*. After completing his examination, Dr. Hoffman went on to summarize as follows:

> A 56-year-old male, with a history of enlarged heart. Never hospitalized. He did undergo catheterization. Not having any use of nitroglycerin. No experience of chest pain and no episodes of pedal edema. *He has had hypertension, treated as noted, but it is not very well controlled since he did take his medication this morning and his blood pressure is 160/100.* He has no history of hepatitis. Denies any use of intravenous drugs and does not appear to have any major cognitive issues.

*Id*. (emphasis added). In his RFC assessment, Dr. Hoffman opined, *inter alia*, that Plaintiff could perform the following in an eight-hour work day: sit for a total of five hours, stand for a total of

8

two hours, and walk for a total of two hours. R. 520. Plaintiff could occasionally tolerate exposure to, *inter alia*, humidity and wetness; dust, odors, fumes, and pulmonary irritants; and extreme cold. R. 524.

At the administrative hearing, the ALJ and Plaintiff's counsel questioned Dr. Charles Murphy, the testifying medical expert, about Plaintiff's hypertension and Dr. Hoffman's findings on consultative examination. R. 89–96. Dr. Murphy had testified that Plaintiff's medically determinable impairments included hypertension and hypertensive cardiovascular disease with a borderline low ejection fraction. R. 90. Plaintiff's counsel examined the medical expert regarding Plaintiff's hypertension as follows:

> Q …. The Claimant's been described as suffering from renal hypertension. Is that right?
>
> A Well, no, not -- I mean, he's -- he, he would certainly have renal vascular hypertension, which is not necessarily the same as renal hypertension.
>
> Q Okay.
>
> A And I could, I could not find, I could not find any verification of that.
>
> Q Okay. What is – what's the difference between renal vascular hypertension and renal hypertension in layman's terms?
>
> A Well, well, people with renal disease can develop hypertension through the fluid overload and retention of sodium and so forth. Renal vascular hypertension involves the narrowing of, of one of the arteries, main arteries that goes to the kidney, and that, of course, can precipitate hypertension.
>
> Q And your review of the record doesn't reveal any of that?
>
> A Well, he has hypertension, which is really the main point. You know, the cause of it is, is not clear. I don't see that they did testing to determine renal vascular hypertension, and I don't think he's had treatment for renal vascular hypertension, specifically, but he's he has hypertension, and he's being treated for that.

R. 93–94. Plaintiff's counsel went on to specifically ask the medical expert if Plaintiff's hypertension was uncontrolled and whether there was evidence that Plaintiff did not take his medication properly:

> Q Okay. And, and approaching with -- would you, would you describe him as having uncontrolled hypertension?
>
> A Well, I would describe him as having uncontrolled hypertension when he doesn't take his medication. All of the blood pressures, and some of them, you know, when he was either at the doctor's office or if he did not take his medicine were fairly high. But then we, we move forward to -- oh, we move forward to later, and his -- you know, *in 2015, I'm looking at diastolics of 80 to 90, systolics of, you know, 116 to 134, and so those are, are reasonably well controlled. At the CE, his pressure was 160 over 100, which was elevated. Unfortunately, they didn't test it again, because, frequently, when you first go into a doctor's office, it is high. So, I think it's controllable with, with medication.*
>
> Q Okay. Can you point me to a, an entry that, that indicates to you or indicated to you that he wasn't taking his medication properly?
>
> A Well, there was -- I remember at least one in 9F, in February of 2015. He came in with a very high blood pressure, and he had been off his medication.
>
> Q So, did -- so, there is one entry like that?
>
> A Well, that's one I wrote down.
>
> CLMT: I take my medicine every day.
>
> ATTY: I understand.
>
> BY ATTORNEY:
>
> Q Do you recall any others?
>
> A I didn't -- I don't think I wrote any down.

R. 94–95 (emphasis added); *see also* R. 97 (reflecting Plaintiff's testimony that he regularly takes his medication). Upon further examination by Plaintiff's counsel, the medical expert disagreed with Dr. Hoffman's characterization of Plaintiff's hypertension as uncontrolled and

10

disagreed, too, with Dr. Hoffman's RFC determination, testifying that Plaintiff could stand and walk on a sustained basis all day despite his hypertension:

> Q Okay. And you would -- you, you disagree with Dr. Hoffman, who said that he couldn't stand and walk for more than four or five hours. But on one hand –
>
> A Well, well –
>
> Q Well, let me finish. Let me -- you said he, he could stand around six hours, stand and walk around six hours. Is around six hours are you confident that he could, could stand for six hours, given his –
>
> A His –
>
> Q -- hypertension, cardiovascular disease?
>
> A Well -- yeah, he can stand and walk six hours out of an eight-hour day, and he can sit six hours out of an eight-hour day.
>
> Q Can he sit eight hours out of -- can he stand and walk eight hours out of an eight-hour day?
>
> A Well, that's not usually a, a question. I -- you know, it's usually, in a typical workday, we're looking at six hours, maximum, standing and walking and the other two is sitting. We don't normally assess whether they can do it eight hours out of an eight-hour workday.
>
> Q Well, indulge me just for this question, and, and answer whether you think, with the essential hypertension that he has, renal or otherwise, and the enlarged heart and the coronary -- and the hypertensi[ive] coronary artery disease, whether he could stand and walk at a job all day.
>
> A Yes.
>
> Q On a sustained basis?
>
> A Yes.

R. 95–96.

At step two of the sequential evaluation, the ALJ found, as previously noted, that Plaintiff's severe impairments are hypertension and hypertensive cardiovascular disease. R. 13. At step three, the ALJ found that Plaintiff did not have an impairment or combination of

11

impairments that meets or medically equals a listed impairment, reasoning as follows: "The claimant's hypertension and hypertensive cardiovascular disease do[ ] not meet or equal any listing in the 4.00 category because there is no evidence of end organ dysfunction, heart failure, or coronary artery disease, and the claimant has only a borderline low ejection fraction. (4F pgs. 18-20; 5F pgs. 15-16)." R. 14.

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday; sit with normal breaks for a total of about 6 hours in an 8-hour workday; can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; can occasionally balance, kneel, crouch, squat, and crawl; cannot perform work involving hazards such as machinery, operating motor vehicles, and unprotected heights; must avoid temperature extremes; and he must avoid even moderate exposure to odors, dusts, fumes, gases, poor ventilation, toxic dusts, chemicals, and other irritants due to cardiovascular disease.

*Id*. The ALJ also found that Plaintiff's hypertension was "relatively stable" and accorded "great weight" to the medical expert's testimony as follows:

> Considering the claimant's relatively stable hypertension and hypertensive cardiovascular disease with borderline low ejection fraction, the undersigned finds that the claimant is limited to light exertional work, with further postural and environmental limitations as set forth above. While the claimant alleges disabling physical impairments since 2012, he did not seek regular medical treatment until 2014, and he has required solely conservative treatment of medication management and diet and exercise. (4F pgs. 10-11). The claimant has only required emergency room treatment for his hypertension on one occasion, following approximately a month of medication noncompliance. (6F; l0F pgs. 4, 7-8). During routine appointments with his primary care physicians and cardiologist, the claimant has generally reported no complaints and his physicians have advised him to exercise regularly. (13F pgs. 12-21; 13F pgs. 3-4). The claimant has also reported relatively high functioning, as he still lives independently, travels via walking and public transportation to the library, church, friends' houses, and to shop for food on a daily basis, and only reported having to stop and rest after walking 20 blocks. (4E).

> As for the opinion evidence, the medical expert testified that the claimant's hypertension and hypertensive cardiovascular disease with borderline low ejection fraction would limit the claimant to light exertional level work, and he should also avoid concentrated exposure to pulmonary irritants and temperature extremes. *The medical expert testified that the claimant had fairly high blood pressure when he was not taking his medications, but once he started taking medication, his hypertension was relatively well controlled.* (Hearing testimony). The medical expert's testimony is given great weight, as he is familiar with Social Security policy and regulations, he reviewed the complete documentary record, and he provided a detailed explanation with references to the evidence in the record to support bis opinion. Nevertheless, the undersigned has found some additional postural limitations and stricter environmental limitations out of an abundance of caution.

R. 16–17 (emphasis added). The ALJ, however, accorded "limited weight" to the opinion of Dr. Hoffman:

> The consultative examiner opined that the claimant could occasionally lift and carry up to 50 pounds and frequently lift and carry ten pounds, but could only sit for five hours, and stand and walk for two hours in an eight hour workday, with additional postural, manipulative, and environmental limitations. (14F pgs. 5-11). This opinion is given limited weight as his limitations on sitting, standing, and walking and manipulative limitations are inconsistent with his largely unremarkable physical examination and he provided no supporting explanation for the limitations on sitting, standing, walking, or postural or manipulative limitations. (14F pg. 2). Additionally, the opinion is internally inconsistent, as he opined that the claimant could frequently carry ten pounds, but only walk for two hours in an eight hour workday.

R. 17. The ALJ explained that the RFC found by him "is supported by the medical expert's testimony, the claimant's limited treatment record, and high reported functionality." *Id.* The ALJ therefore went on to find that Plaintiff was capable of performing his past relevant work as a security guard and, therefore, was not disabled. *Id.*

Plaintiff disagrees with these findings, arguing, *inter alia*, that the ALJ erred in relying on the medical expert's finding that Plaintiff's hypertension was controlled when he took his medication and discounting the contrary opinion of the consultative examiner, resulting in a

13

flawed RFC determination. *Plaintiff's Moving Brief*, ECF No. 26, pp. 19–23, 33–37. Plaintiff's arguments are well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer*, 186 F.3d at 433; *Cotter*, 642 F.2d at 704. "An ALJ must explain the weight given to physician opinions. . . ." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011) (citing 20 C.F.R. § 404,1527(f)(2)(ii)). Moreover, an ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli*, 247 F.3d at 42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter*, 642 F.2d at 705). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209–10 (3d Cir. 2019) ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno*

14

*v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

Here, the medical expert testified that Plaintiff has "uncontrolled hypertension when he doesn't take his medication[,]" pointing to one occasion in February 2015, when Plaintiff's blood pressure was elevated because he had not been taking his medication. R. 94–95; *see also* R. 436 (reflecting record where Plaintiff apparently lost his insurance coverage and did not take his medication). However, in rendering this opinion, the medical expert did not consider all the evidence relevant to Plaintiff's hypertension. Specifically, the medical expert appears to have overlooked evidence that reflects elevated blood pressure readings even when there was good medication compliance. *See, e.g.*, R. 353 (reflecting a November 12, 2014, office visit with a blood pressure reading of 132/100 and the notation that Plaintiff "[t]akes BP medications as instructed and is tolerating well except for intermittent H/As"), 351–52 (reflecting December 8, 2014, office visit with a blood pressure reading of 138/98 and the notations "[blood pressure m]edication adherence yes. Home BP Monitoring yes," "pt states he is taking all his medication as directed," "[hypertension m]edication adherence Good"), 509 (reflecting April 30, 2015, office visit with a blood pressure reading of 140/90 and the notation "[hypertension m]edication adherence Good"); *see also* R. 95 and 97 (reflecting Plaintiff's hearing testimony that he takes his medicine every day); *Nicole B. v. Decker*, No. CV 20-7467, 2020 WL 4048060, at *8 (D.N.J. July 20, 2020) ("Stage 1 hypertension defined as 130-139 systolic, 80-89 diastolic; stage 2 as ≥ 140 systolic, ≥ 90 diastolic[.]") (citations omitted). Moreover, the medical expert went on to

15

discount Plaintiff's elevated blood pressure reading of 160/100 during Dr. Hoffman's consultative exam (which also found that Plaintiff's hypertension was not controlled even with medication, R. 516), by simply speculating that "frequently, when you first go into a doctor's office, it is high. So I think it's [Plaintiff's hypertension] is controllable with, with medication." R. 95.

The ALJ accorded "great weight" to the medical expert's opinion at step four and explicitly relied on this expert's testimony in crafting the RFC determination. R. 17 (assigning "great weight" to the medical expert's opinion and stating that the RFC assessment is supported by, *inter alia*, the "medical expert's testimony"). The flaws in the medical expert's opinion and testimony, *i.e.*, his failure to take into account all the relevant evidence relating to Plaintiff's hypertension and relying on mere speculation to discount Dr. Hoffman's elevated blood pressure reading, therefore infects the RFC determination. *Id*. Similarly, in assigning "great weight" to the medical expert's flawed opinion and only "limited weight" to Dr. Hoffman's opinions, the ALJ based his assessment of Dr. Hoffman's opinion, *i.e.*, that Plaintiff's hypertension was not well controlled despite medication, on faulty reasoning. R. 17. Although an ALJ may choose which evidence to credit, the ALJ cannot reject evidence for the wrong reason. *Sutherland*, 785 F. App'x at 928; *Cotter*, 642 F.2d at 706–07; *Rodriguez v. Colvin*, No. CV 16-4322, 2018 WL 1474073, at *4 (E.D. Pa. Mar. 23, 2018) ("Courts have concluded that substantial evidence cannot be based on factual errors.") (collecting cases). Accordingly, this Court cannot conclude that substantial evidence supports the ALJ's evaluation of the opinion of the medical expert that Plaintiff's hypertension was "reasonably well controlled" with medication because the medical expert did not take into account all the relevant data relating to Plaintiff's hypertension and instead relied on mere speculation to discount Dr. Hoffman's elevated blood pressure reading

16

and opinion of Plaintiff's hypertension. *Cf. Rodriguez v. Saul*, No. CV 19-16569, 2020 WL 5201346, at *3 (D.N.J. Sept. 1, 2020) ("Because the ALJ gave great weight to the medical expert's testimony, including the potentially incorrect statements about narcolepsy and cataplexy, when determining that Claimant does not have an impairment that meets or medically equals the severity of a listed impairment, the Court cannot conclude that ALJ's decision was based upon substantial evidence."); *Smith v. Comm'r of Soc. Sec.*, No. 3:11-CV-221, 2012 WL 1185997, at *8 (S.D. Ohio Apr. 9, 2012) ("Accordingly, the ALJ improperly singled out the November 3, 2009 reading, and ignored a series of elevated blood pressure readings, failing to consider the record as a whole. Therefore, the ALJ's finding regarding Plaintiff's hypertension is not supported by the record."); *Jackson v. Astrue*, 733 F. Supp. 2d 506, 516 (D. Del. 2010) ("Further, the ALJ concluded that the physicians' opinions contained speculative statements which were unsupported by a review of plaintiff's medical records dated prior to the date last insured."), *aff'd sub nom. Jackson v. Comm'r Soc. Sec. Admin.*, 432 F. App'x 178 (3d Cir. 2011).

In sum, because the ALJ based his RFC determination, at least in part, on the medical expert's flawed testimony and because the ALJ apparently implicitly discounted on the same flawed basis the opinion of the consultative examiner that Plaintiff's hypertension was uncontrolled despite medication, the Court concludes that the ALJ's decision has not included "a clear and satisfactory explication of the basis on which it rests" sufficient to enable this Court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. The matter must therefore be remanded for further consideration. It may be that, on remand, the ALJ will again assign limited weight to Dr. Hoffman's assessment of Plaintiff's hypertension, craft the same RFC, and ultimately conclude that Plaintiff is not disabled. However, at this juncture, the Court concludes that the ALJ's decision is not supported by substantial evidence. This Court therefore

17

concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of these issues.[2]

## V. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  March 26, 2021                               *s/Norah McCann King*
                                                                 NORAH McCANN KING
                                                                 UNITED STATES MAGISTRATE JUDGE

---

[2] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's hypertension, Dr. Hoffman's opinion, and the RFC determination, the Court does not consider those claims.